IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATALIE WILSON<br><br>                     Plaintiff,<br>-vs-<br><br>SURGICAL CARE AFFILIATES;<br>SARAH ARMSTRONG *(individually)*;<br>TIFFANY PINCIOTTI *(individually);*<br>and NICHOLAS (LAST NAME UNKNOWN) *(individually)*,<br>                     Defendant. | Civil Action No. |

Plaintiff, NATALIE WILSON, by and through her attorneys, Freundlich and Littman, LLC, hereby files the following civil action complaint against Defendants, SURGICAL CARE AFFILIATES; TIFFANY PINCIOTTI; SARAH ARMSTRONG; and NICHOLAS [last name unknown] (collectively "Defendants") for violations of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (as amended in 1972, 1978, and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"); and the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951 et seq. ("PHRA").

## PARTIES

1. Plaintiff, NATALIE WILSON (hereinafter referred to as "Plaintiff" or "WILSON"), is an individual Black female who is a resident of the County of [insert county] in the Commonwealth of Pennsylvania.

2. Defendant, SURGICAL CARE AFFILIATES (hereinafter referred to as "Defendant" or "SCA"), is a foreign business corporation incorporated under the laws of the State of Delaware and authorized to do business in the Commonwealth of Pennsylvania.

3. At all times material, Defendant operates a corporate headquarters at 569 Brookwood Village, Suite 901, Birmingham, AL 35209.

4. At all times material, Defendant operates a surgical facility at 319 2nd Street Pike, Southampton, PA 18966.

5. At all times material, Defendant TIFFANY PINCIOTTI (hereinafter referred to as "Defendant" or "PINCIOTTI") was employed by Defendant SCA.

6. At all times material, Defendant PINCIOTTI was employed as the Operating Room Manager for Defendant's surgical eye center.

7. At all times material, Defendant PINCIOTTI held supervisory authority over Plaintiff.

8. At all times material, Defendant SARAH ARMSTRONG (hereinafter referred to as "Defendant" or "ARMSTRONG") was employed by Defendant SCA.

9. At all times material, Defendant ARMSTRONG was employed as the Operating Room Coordinator and Director of Nursing for Defendant's surgical eye center.

10. At all times material, Defendant ARMSTRONG held supervisory authority over Plaintiff.

11. At all times material, Defendant NICHOLAS [last name unknown] (hereinafter referred to as "Defendant" or "NICHOLAS") was employed by Defendant SCA.

12. At all times material, Defendant NICHOLAS was employed as a registered nurse in the surgical center.

13. At all times material, Defendant NICHOLAS held supervisory authority over Plaintiff.

14. At all times relevant to this Civil Action, Defendants were Plaintiff's employer and employed at least 15 employees.

15. At all times relevant to this Civil Action, Plaintiff was qualified for his position with Defendants.

## JURISDICTION AND VENUE

16. Jurisdiction of this action is conferred upon this Court pursuant to a Federal Question under Title VII of the Civil Rights Act of 1964.

17. This Court also has supplemental jurisdiction over the State causes of action.

18. Venue is proper in the Eastern District of Pennsylvania as Plaintiff was employed by Defendants and worked in the County of Philadelphia in the Commonwealth of Pennsylvania where the discrimination, harassment and hostile work environment complained of occurred.

19. On or around June 8, 2024, Plaintiff, Natalie Wilson, filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants as set forth herein.

20. Plaintiff's Charge of Discrimination was dual filed with the Pennsylvania Human Relations Commission ("PHRC") and the Philadelphia Commission on Human Relations ("PCHR").

21. Plaintiff's rights under the Pennsylvania Human Relations Act and the Philadelphia Fair Practices Ordinance will be ripe for suit one year after Plaintiff's Charge of Discrimination was dual filed at the PHRC and the PCHR.

22. Plaintiff includes her claims under the PHRA in his civil action complaint today in the interest of judicial economy, as Plaintiff's rights under these laws will be ripe in approximately 30 days.

23. On or around July 22, 2025, the EEOC issued and sent a Dismissal and Notice of Rights to Plaintiff which set forth the requirement that Plaintiff file a civil action within ninety (90) days of the Dismissal and Notice of Rights.

24. This action is hereby commenced within ninety (90) days of the date when Plaintiff received the Dismissal and Notice of Rights which is dated and was sent July 22, 2025.

## MATERIAL FACTS

25. In or around April 2020, Defendant SCA hired Plaintiff for the surgical technician position at Defendant's Southampton location at 419 2nd Street Pike, Southampton, PA 18966.

26. At this location, Defendant operated a surgical eye care center.

27. At the time Plaintiff was hired, and during the duration of her employment, Plaintiff was the only Black individual working full-time in the operating room.

28. The only other Black employee was an anesthesiologist who visited the location periodically, approximately three times per week.

29. The vast majority of Plaintiff's co-workers were Caucasian, including Defendants PINCIOTTI, ARMSTRONG, and NICHOLAS.

30. Defendants were aware that Plaintiff was a Black female originally from Philadelphia and still resided in Philadelphia.

31. Almost immediately upon obtaining employment, Plaintiff was subjected to multiple instances of racially discriminatory comments in the workplace.

32. On one occasion, Defendant PINCIOTTI asked Plaintiff how she became a surgical technician.

33. After Plaintiff explained her education and career path, Defendant PINCIOTTI stated that it was "crazy how a person can grow up and just completely change their situation."

34. Plaintiff asked Defendant PINCIOTTI to clarify, and Defendant PINCIOTTI reiterated that it was unusual for someone from an inner-city Black background to achieve such a position.

35. Plaintiff found this statement discriminatory, demeaning, and offensive but did not report it at that time.

36. On another occasion, Defendant PINCIOTTI recounted a story about her father worshiping Hitler and instructing her not to play with Black children, stating she feared "turning Black" if she touched them.

37. Plaintiff expressed that such statements were inappropriate and made her uncomfortable, but Defendant PINCIOTTI dismissed Plaintiff's concerns.

38. Around May 2020, during the George Floyd protests, Defendant PINCIOTTI described verbally confronting her nephew for carrying a "#BlackLivesMatter" sign in a manner that belittled Black people.

39. Plaintiff objected to the conversation, but Defendants continued discriminatory remarks, establishing a pattern of racial discrimination in the workplace.

40. Within two months, Plaintiff experienced racially discriminatory conduct on a near weekly basis.

41. Plaintiff reported the conduct to Defendant PINCIOTTI's supervisor, Defendant ARMSTRONG, who failed to investigate or take remedial action.

42. Plaintiff was out of work during 2021 due to an injury. Upon her return in 2022, Defendants PINCIOTTI and NICHOLAS continued making racially discriminatory remarks, including asking "How should we talk to you?" and "I don't know how to talk to 'you people.'"

43. Plaintiff reported repeated discriminatory conduct, including Defendant PINCIOTTI's racially insensitive story in July 2022 about her child's friend at Dorney Park.

44. In July 2023, Plaintiff reported additional racial discrimination, including a racially offensive comedy clip shown by Defendant PINCIOTTI.

45. Plaintiff's reports to human resources were ignored, and Defendants continued retaliatory behavior, including issuing write-ups against Plaintiff for her "negative attitude" while failing to discipline Defendants PINCIOTTI or NICHOLAS for their discriminatory conduct.

46. On or around August 28, 2023, approximately two weeks after Plaintiff's final complaint to human resources, Defendants PINCIOTTI and ARMSTRONG terminated Plaintiff.

47. Defendants failed to investigate Plaintiff's complaints or take appropriate remedial measures, ratified discriminatory and retaliatory conduct, and fostered a hostile work environment based on race.

48. Plaintiff was subjected to unlawful race discrimination, retaliation, and a hostile work environment, resulting in loss of income, benefits, emotional pain, humiliation, suffering, and other damages.

49. Defendants' conduct was malicious, willful, outrageous, and committed with knowledge of the law, warranting punitive damages.

50. The foregoing conduct demonstrates a pattern and practice of discrimination and retaliation by Defendants.

## COUNT I
## FOR DISCRIMINATION UNDER TITLE VII

51. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

52. Title VII, 42 U.S.C. § 2000e-2, makes it unlawful for an employer to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's race.

53. Defendants engaged in unlawful employment practices by discriminating against Plaintiff based on her race.

54. Plaintiff was subjected to adverse employment actions and a hostile work environment due to her race.

55. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer loss of income, benefits, emotional distress, and other damages.

## COUNT II
## RETALIATION UNDER TITLE VII
**(against corporate Defendants only)**

56. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

57. Title VII, 42 U.S.C. § 2000e-3(a), makes it unlawful for an employer to discriminate against any employee because she has opposed any practice made unlawful under Title VII or has participated in any investigation or proceeding under Title VII.

58. Defendants SCA retaliated against Plaintiff by issuing write-ups, subjecting her to adverse employment actions, and ultimately terminating her because she opposed discriminatory practices and reported them to management and human resources.

59. Defendants' retaliatory actions constitute unlawful retaliation under Title VII.

## COUNT III
## DISCRIMINATION UNDER STATE LAW

60. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

61. The PHRA, 43 P.S. § 955(a), makes it unlawful for any employer to discriminate against an individual in the terms, conditions, or privileges of employment because of race.

62. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her race and failing to investigate or remedy her complaints.

63. Plaintiff suffered loss of income, benefits, emotional pain, humiliation, and other damages as a result of Defendants' conduct.

## COUNT IV
## RETALIATION UNDER STATE LAW

64. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

65. The PHRA, 43 P.S. § 955(d), makes it unlawful for any person or employer to retaliate against an individual for opposing any practice forbidden by the PHRA or for participating in any investigation or proceeding under the PHRA.

66. Defendants engaged in retaliation by issuing write-ups, fostering a hostile work environment, and ultimately terminating Plaintiff in response to her complaints of discrimination.

## COUNT V
## DISCRIMINATION UNDER STATE LAW – AIDING AND ABETTING
(against individual Defendants only and not against corporate Defendants)

67. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

68. The PHRA, 43 P.S. § 955(e), makes it unlawful for any person to aid, abet, incite, compel, or coerce the doing of any act declared unlawful under the PHRA.

69. Defendants PINCIOTTI, ARMSTRONG, and NICHOLAS aided and abetted the discriminatory and retaliatory conduct described herein by actively participating in, condoning, or failing to stop the discrimination against Plaintiff.

70. As a direct and proximate result of their actions, Plaintiff suffered loss of income, benefits, emotional distress, and other damages.

## JURY DEMAND

Plaintiff requests a jury trial on all issued to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, liquidated damages, statutory damaged, attorney's fees, costs, and disbursement of action; and for such other relief as the Court deems just and proper.

DATED: October 20, 2025

                                            **FREUNDLICH & LITTMAN, LLC**

                                            ***/s/ Samuel C. Wilson***
                                            Samuel C. Wilson, Esquire
                                            1425 Walnut Street
                                            Suite 200 (2nd Floor)
                                            Philadelphia, PA 19102
                                            215-545-8500
                                            Sam@FandLLaw.com
                                            *Counsel for Plaintiff*